UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| WEST COAST LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>DOLORES C. FALES and TERRI NARON, as Trustee of the Kevin Turner Heritage Trust,<br><br>Defendants. | Civil No. SA-14-548 (RCL) |

## MEMORANDUM OPINION

Before the Court is the defendant Dolores Fales' motion for summary judgment [19] seeking 50% of a disputed life insurance policy. Upon consideration of Fales' motion for summary judgment, the defendant Terri Naron's response [20] thereto, Fales' reply [21], the applicable law, and the entire record herein, the Court will GRANT Fales' motion for summary judgment.

## I.   BACKGROUND

The undisputed facts of this case are straightforward. On May 14, 2007, West Coast Life Insurance Company ("West Coast") issued to the decedent J. Kevin Turner a $1 million life insurance policy. Pl. West Coast's Interpleader Compl. ¶ 7, ECF No. 1. In the original policy, Turner designated his daughter Nicole and son Kaden as the beneficiaries. *Id.* On October 10, 2007, Turner submitted a change of beneficiary request changing the primary beneficiary designation to The Kevin Turner Heritage Trust of 2007 (the "Trust")—"the sole beneficiaries of which are his [two] children . . . ." *Id.* ¶ 9; Def. Naron's Resp. 1-2, ECF No. 20. West Coast

approved the change in a letter dated October 22, 2007. *Id.* Defendant Terri Naron is the trustee of the Trust. Def. Fales' Mot. Summ. J. 2, ECF No. 19.

For a number of years until his death, Turner was in a relationship with defendant Dolores Fales. *Id.* at 1. Fales states—and Narron does not dispute—that, during Turner's relationship with Fales, Turner purchased a second $1 million life insurance policy from Transamerica that designated Fales and her daughters as the beneficiaries. *Id.* at 2. Yet in 2010, Turner terminated the Transamerica policy, maintaining only the West Coast policy. Def. Fales' Reply 2, ECF No. 21.

On March 12, 2010, West Coast received a second change of beneficiary request "designating as the primary beneficiaries the Trust, 50% and Dolores Christine Fales, friend, 50%." Interpleader Compl. ¶ 10. However, on March 17, "West Coast returned the form to [Turner] for the addition of the 'complete trust date.'" *Id.* (citing Ex. D). Subsequently, on April 22, "West Coast received the [c]hange of [b]eneficiary form to which the [complete trust date] had been added. West Coast recorded the change of beneficiaries [and mailed a letter to Turner acknowledging the change] that same day." *Id.* (citing Ex. E).

The 2010 change of beneficiary form bears Turner's signature, as well as purported witness signatures by Fales and Naron. *Id.* Ex. D at 4. However, both Fales and Naron state that they never signed the document—and that their signatures must have been forged. Mot. Summ. J. Ex. A ¶ 5; Resp. 3. Moreover, the beneficiary form notes, among its "signature requirements," that "[s]ignatures must be witnessed by a disinterested party of legal age." Interpleader Compl. Ex. D at 4. In her response to Fales' motion for summary judgment, Naron insinuates that Turner's signature may have been forged as well. Resp. 3 ("[The false signatures of Fales and Naron] call into question the validity of the signature of [] Turner"). Yet, as the Court will

explain below, Naron insufficiently pleads any factual allegation of forgery as to Turner's signature for purposes of denying an adverse summary judgment motion.

Turner passed away on February 17, 2014. After distributing 50% of the policy's proceeds to the Trust in May 2014, Interpleader Compl. ¶ 23, West Coast brought this interpleader action on June 18, 2014, pursuant to 28 U.S.C. § 1335(a), naming Fales and Naron as defendants, in order to resolve the dispute over the remaining 50% of Turner's life insurance policy. Pursuant to this Court's Order, ECF No. 15, Judge Rodriguez presiding, West Coast deposited the remaining proceeds of the policy, plus accrued interest, in the Registry of the Court on November 3, 2014. Notice, ECF No. 16.

## II. LEGAL STANDARD

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* factual dispute between the parties will not defeat . . . summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also Labit v. Akzo-Nobel Salt, Inc.*, No. 99-30047, 2000 WL 284015, at *1 (5th Cir. Feb. 7, 2000). A fact is material if, under the applicable law, "it might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255; *see also Luna v. Mullenix*, No. 13-10899, 2014 WL 7238370, at *3 (5th Cir. Dec. 19, 2014). A nonmoving party, however, must establish more than "the existence of a

scintilla of evidence" in support of its position. *Anderson*, 477 U.S. at 252. Indeed, "[a] party opposing [] a summary judgment motion may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### III. ANALYSIS

#### A. There Is No Genuine Dispute as to Any Material Fact

Upon review of the complaint, answers, and briefs in this case, the Court finds that the sole purportedly *material* factual dispute is whether Turner signed the 2010 West Coast change of beneficiary form. It is undisputed that the signatures of both Fales and Naron, as witnesses, on the form, *see* Interpleader Compl. Ex. D at 4, were falsified. Mot. Summ. J. Ex. A ¶ 5; Def. Naron's Resp. 3, ECF No. 20. Naron subsequently argues that Fales' and Naron's false signatures "call into question the validity of the signature of [] Turner" on the same document—thus implying that the Court should declare the change of beneficiary form unenforceable in its entirety. *See* Resp. 3.

However, Naron raises this supposed factual dispute for the first time in her legal brief responding to Fales' motion for summary judgment. A claim that Turner's signature was forged appears nowhere in either West Coast's interpleader complaint or Naron's answer to the complaint. Naron's answer presents the following affirmative defense: "Naron affirmatively pleads that the 2010 change of beneficiary was procured through forgery or other fraud, was not executed in accordance with the required terms, or is otherwise invalid." Def. Naron's Answer ¶ 34, ECF No. 8. It is true that the Court of Appeals for the Fifth Circuit has yet to decide whether the heightened pleading standard established by the Supreme Court in *Bell Atlantic v.*

4

*Twombley*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), to govern complaints or the "fair notice" standard, *see Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999), applies to pleading affirmative defenses.[1] *See Certain Underwriters at Lloyd's Subscribing to Policy no. TCN034699 v. Bell*, No. 13 Civ. 113, 2014 WL 4546046, at *2 (S.D. Miss. Sept. 11, 2014). Yet *regardless* of whether the *Twombley/Iqbal* plausibility standard or the notice pleading standard applies to Naron's affirmative defenses, paragraph thirty-four of Naron's answer falls short of sufficiently pleading that Turner's signature, specifically, was forged. Federal Rule of Civil Procedure 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." While "Rule 9(b) does not reflect a subscription to fact pleading," it still "requires [] simple, concise, and direct allegations of the circumstances constituting fraud." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009) (internal quotation marks and citations omitted). Indeed, "[p]leading fraud with particularity in this circuit requires 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (alteration in original) (quoting *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)); *see also Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607

---

[1] In *Woodfield*, the Circuit stated that "[a]n affirmative defense is subject to the same pleading requirements as is the complaint." *Id.* However, at the time the Circuit made this pronouncement, *Twombley* had yet to be decided and the notice pleading guidelines articulated in *Conley v. Gibson*, 355 U.S. 41 (1957), remained the accepted standard for complaints. Nevertheless, the Court further notes that part of the rationale which may work *against* finding that the heightened plausibility standard applies to defenses—for instance, the diminished need for notice of an affirmative defense offered in response to allegations in a typical complaint, *see, e.g., E.E.O.C. v. LHC Grp. Inc.*, No. 11 Civ. 355, 2012 WL 3242168, at *3 (S.D. Miss. Aug. 7, 2012)—may not govern affirmative defenses presented in an *interpleader* scenario. With no need to decide the issue, the Court simply observes that Naron's answer here effectively serves a similar purpose to a typical complaint. West Coast's interpleader complaint seeks resolution of a dispute between co-defendants Naron and Fales, rather than a dispute between plaintiff West Coast and one of the defendants. Therefore, the interpleader complaint does not truly present claims against Naron which require affirmative defenses—instead, Naron's affirmative defenses represent an opportunity for Naron to levy claims, for the first time, against Fales. And having failed to file any cross-claims against Fales, *see* Order ¶ 8, ECF No. 15, it appears that Naron's answer is the *only* instance where she chose to present allegations against her co-defendant.

F.3d 1029, 1032 (5th Cir. 2010) ("Put simply, Rule 9(b) requires the who, what, when, where, and how to be laid out." (internal quotation marks and citation omitted)). Consequently, Naron's insinuation that Turner's signature was also forged can only be characterized as mere speculation and, thus, insufficient as a purported factual dispute to prevent summary judgment.[2]

### B. "Substantial Compliance" Is Not at Issue

Both Naron and Fales focus the crux of their legal arguments on whether Turner "substantially complied" with the method for changing a beneficiary as defined by West Coast. Mot. Summ. J. 4-6; Resp. 3-4; Reply 2-4. Texas law maintains that "when the terms of the policy of insurance . . . define the method by which the insured may change the beneficiary, a change is not accomplished unless the insured has substantially complied with the method designated, or . . . unless he has done all that he could reasonably have done to perfect a change." *Tips v. Sec. Life & Acc. Co.*, 191 S.W.2d 470, 471 (Tex. 1945) (internal citation omitted). However, the co-defendants' dispute over substantial compliance is misplaced.

Here, substantial compliance is not in question because West Coast *accepted* the change of beneficiary for Turner's policy. *See* Interpleader Compl. Ex. E at 1 ("The change which you recently requested has been made."). Upon this Court's review of Texas case law, it is apparent that courts employ the equitable tool of substantial compliance when an insurance company has *not* accepted or, often times, not received, a change of beneficiary request prior to the policyholder's death. *E.g. Tips*, 191 S.W.2d at 471; *Prudential Ins. Co. v. Durante*, 443 S.W.3d 499, 503 (Tex. App.-El Paso 2014); *Rock v. Funk*, No. 01-02 Civ. 345, 2003 WL 139610, at *1 (Tex. App.-Houston Jan. 9, 2003); *Gladding v. Prudential Ins. Co. of Am.*, 521 S.W.2d 736, 737 (Tex. App.-Houston 1975); *Todd v. Mut. Ben. Life Ins. Co.*, 483 S.W.2d 889, 890 (Tex. App.-

---

[2] The same holding applies to Naron's undue influence allegation, which also appears for the first time in Naron's response to Fales' motion for summary judgment. *See* Resp. 5.

Waco 1972); *Witt v. Citizens Nat. Bank, Waco*, 440 S.W.2d 112, 113 (Tex. App.-Waco 1969). Here, regardless of the legitimacy of the witness signatures on the change of beneficiary form in dispute, the Court need not determine whether the form complied with West Coast's policies— substantially or otherwise—because West Coast has already decided that question in the affirmative. *See* Interpleader Compl. Ex. E at 1. Similarly, Naron's argument that Fales is an *interested* witness in contravention of the change form's "requirement[]" that "signatures must be witnessed by a disinterested party of legal age," Interpleader Compl. Ex. D at 4, is of no moment in this proceeding. *See* Resp. 3. West Coast must have known Fales, as a newly designated beneficiary, was an interested witness, yet the insurance company still accepted the change. Interpleader Compl. Ex. E at 1; *cf. Garabrant v. Burns*, 111 S.W.2d 1100, 1103 (Tex. Comm'n App. 1938) ("[T]he insurer may waive compliance with regulations intended for its benefit . . . ."). Thus, the Court finds that West Coast's acceptance of Turner's change of beneficiary request demonstrates that the form sufficiently conformed to West Coast's requirements and precludes any dispute over substantial compliance.[3]

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS defendant Fales' motion for summary judgment [19]. The remaining 50% of policy benefits shall be paid to Fales from the Registry of

---

[3] Naron further argues that because Turner paid the West Coast policy premiums from a bank account "set up . . . by [] Naron for the Trust, into which [] Turner made monthly deposits to cover the insurance premiums"—another allegation Naron presents for the first time in her response—the Trust "has the right to impose a constructive trust on the [p]olicy proceeds at issue herein." Resp. 5-6. The Court rejects the notion that Turner lost the ability to change the beneficiaries of his life insurance policy because money for the policy premiums may have come directly or indirectly from the Trust, especially when Naron has not pled any facts indicating that the policy was, in fact, an irrevocable life insurance trust or that a separate contract existed between Turner and the Trust prohibiting a future change of beneficiary. As explained by Texas' Sixth Court of Appeals,

> Texas law provides that a beneficiary's interest under a life insurance policy vests when any of the following [] conditions is met: (1) there is a contract providing that there will not be a change in the designation of the beneficiary; (2) the life insurance policy itself reserved no right for the owner of the policy to change the beneficiary . . . .

*Cates v. Cincinnati Life Ins. Co.*, 947 S.W.2d 608, 614 (Tex. App.-Texarkana 1997) (internal citations omitted).

the Court. The interpleader complaint is hereby dismissed.

A separate Order consistent with this Memorandum Opinion shall issue this date.

1/14/15
Date

ROYCE C. LAMBERTH
United States District Judge